NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., APPLE INC.,**
*Appellants*

**v.**

**NEONODE SMARTPHONE LLC,**
*Appellee*

---

2023-1464

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-00144.

---

Decided:  July 18, 2024

---

LAUREN ANN DEGNAN, Fish & Richardson P.C., Washington, DC, argued for appellants.  Apple Inc. also represented by WALTER KARL RENNER; NITIKA GUPTA FIORELLA, Wilmington, DE; ALEXANDER MICHAEL PECHETTE, Boston, MA; OLIVER RICHARDS, San Diego, CA.

STANLEY JOSEPH PANIKOWSKI, III, DLA Piper US LLP, San Diego, CA, for appellants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc.  Also represented

by TIFFANY CAROL MILLER; JAMES MARTIN HEINTZ, Reston, VA.

PHILIP GRAVES, Graves & Shaw LLP, Los Angeles, CA, argued for appellee. Also represented by GREER N. SHAW; ROCCO MAGNI, BRIAN MELTON, Susman Godfrey LLP, Houston, TX; KALPANA SRINIVASAN, Los Angeles, CA.

_____

Before LOURIE, PROST, and STARK, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Apple Inc. (collectively, "Samsung") appeal from the final written decision of the U.S. Patent and Trademark Office Patent Trial and Appeal Board ("the Board") concluding that claims 1–6 and 12–17 of U.S. Patent 8,095,879 ("the '879 patent") had not been shown to be unpatentable as obvious under 35 U.S.C. § 103. *Samsung Elecs. Co. v. Neonode Smartphone LLC*, No. IPR2021-00144 (P.T.A.B. Dec. 1, 2022), J.A. 1–55 ("*Decision*"). For the following reasons, we *affirm*.

BACKGROUND

Neonode Smartphone LLC ("Neonode") owns the '879 patent, which is generally directed to touch-sensitive user interfaces for mobile handheld computer units, *e.g.*, cell phones. '879 patent at Abstract. Claim 1, the only independent claim, recites:

1. A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

[1a] a touch sensitive area in which a representation of a function is provided,

SAMSUNG ELECTRONICS CO., LTD. v.                    3
NEONODE SMARTPHONE LLC

> **[1b]** wherein the representation consists of only one option for activating the function and
>
> **[1c]** wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location,
>
> **[1d]** wherein the representation of the function is not relocated or duplicated during the gliding.

*Id.* at col. 6, ll. 45–59 (numbering added). The only claim limitation disputed in this appeal is that which recites: "wherein the representation of the function is not relocated or duplicated during the gliding," *id.*, which the parties and Board refer to as "limitation 1d." *See Decision*, J.A. 19. Thus, whether the claim as a whole is invalid for obviousness settles down to whether limitation 1d was obvious.

Samsung petitioned for, and the Board instituted, *inter partes* review ("IPR") of claims 1–6 and 12–17 of the '879 patent. Samsung argued *inter alia* that the claims are unpatentable as obvious over U.S. Patent 5,406,307 ("Hirayama")[1] in combination with various secondary references not relevant to the issues on appeal. Hirayama is generally directed to a data processing apparatus having a user interface with a number of different functions represented by various icons, *e.g.*, a telephone, a calculator, etc., in an icon group. *See* Hirayama at Abstract, Figure 3A. Hirayama discloses in its "Objects and Summary of the

---

[1]    The Board and parties refer to this reference as "Hirayama307" to distinguish it from a separately asserted patent reference by the same inventor, *i.e.*, U.S. Patent 6,100,878 ("Hirayama878"). Because we need not consider Hirayama878 to dispose of this appeal, we refer to Hirayama307 simply as "Hirayama."

Invention" that the apparatus can detect when a pen touches the display at a position in which a desired icon is displayed and that "the icon display coordinate position is moved in accordance with the movement" of the pen. *Id.* at col. 2, ll. 1–8. Relatedly, Figures 3A and 4A of Hirayama show that, to activate a function, the user touches the icon associated with that function with a pen and then "moves (i.e., drags)" the point of the pen to the display without lifting the pen. *Id.* at col. 4, l. 63–col. 5, l. 7. It describes that when the user then "takes the point of the pen [] off from the surface of the input tablet [], an icon (hereinafter [to] be referred to as a window) enlarged in the form of the processing display mode" of the desired function is "automatically displayed." *Id.* at col. 5, ll. 7–12. In the reverse operation in which a user wants to close a window back to its original position, Hirayama teaches that the user can touch the pen to the window and drag the point of the pen back to the original icon where it can be stored in that position. *Id.* at col. 6, ll. 22–31. It explains that "the pen [] need not be always returned to the [original icon], but if the pen [] is returned to a predetermined icon in the icon group [], then the window can automatically be stored in the vacant icon position." *Id.* at col. 6, ll. 31–35.

Samsung argued that Hirayama renders obvious limitation 1d because "it would have been obvious, given Hirayama's disclosure, to implement the user interface such that the icon is not relocated or duplicated during the gliding of the pen." *Decision*, J.A. 20 (cleaned up).

The Board disagreed, finding that Samsung had not established by a preponderance of the evidence that Hirayama teaches the disputed negative limitation, *i.e.*, the *lack* of any relocation or duplication of the activated icon during the pen movement as limitation 1d requires. *Id.* at J.A. 19–20. The Board reached that conclusion after reviewing Hirayama's disclosure and figures, taking into consideration both parties' expert testimony regarding how

a person of ordinary skill in the art would understand the teachings of Hirayama.

First, the Board concluded that, based on Hirayama's summary of its disclosure, a person of ordinary skill in the art would have understood that the icon can move along with the tip of a pen during the dragging operation. *Id.* at J.A. 21. It noted, however, that the "language . . . adds ambiguity by referring to movement of 'the icon display coordinate position' rather than simply the 'icon.'" *Id.* at J.A. 21–22. Accordingly, the Board found that the summary "does not *necessarily* teach that the icon is visually dragged with the pen," but at minimum "provides at least some evidence that a person of ordinary skill in the art would have understood that the icon *is* visually dragged" in Hirayama's disclosure. *Id.* at J.A. 22 (emphases added). The Board further credited Neonode's expert's testimony on that point. *Id.*

Next, the Board looked to the various figures of Hirayama. With respect to Figure 4A, which depicts a flowchart of the operation of Hirayama's device, the Board concluded that Samsung had not shown by a preponderance of the evidence "that the *absence* . . . of any step of moving [the icon] would have suggested to a person of ordinary skill in the art that no such movement or duplication of [the icon] occurs." *Id.* at J.A. 23. It acknowledged Samsung's expert's testimony regarding how a person of ordinary skill in the art would interpret the figure but found the expert's inference unsupported. *Id.* at J.A. 23–24.

Looking to Figures 3A and 3B, the Board credited Neonode's expert testimony that those figures do not necessarily depict that the icon is neither duplicated nor dragged with the pen because, for example, "Figure 3A simultaneously depicts the state of the user interface at two distinct time periods (immediately after power-on and during a dragging operation)." *Id.* at J.A. 25. But overall, the Board found both parties' proposed interpretations of those

figures to be "equally plausible." *Id.* at J.A. 26; *see also id.* at J.A. 30 ("Given the lack of an explicit disclosure of whether [the icon] is visually dragged during these operations, we find [Neonode's expert's] interpretation . . . to be at least as likely as that proposed by [Samsung's expert.]"). Thus, "because of the unclarity of what is depicted in Figures 3A and 3B," *id.* at J.A. 26, the Board concluded that Samsung had failed to meet its burden of persuasion to show that those figures would have suggested limitation 1d to a person of ordinary skill in the art.

Finally, the Board observed that, in the reverse operation of *closing* a window and returning it as an icon to the icon group, Hirayama refers to a "predetermined *vacant* position." *Id.* at J.A. 30–31. The Board credited Neonode's expert testimony that a person of ordinary skill in the art would have understood that the icon must have been relocated during the drag-and-drop operation when it was first activated because the position to which the icon is being returned is now vacant. *Id.* The Board therefore found Hirayama's "vacant" icon position as "at least mild evidence" that Hirayama's activation process involves relocating or duplicating the icon. *Id.* at J.A. 33.

Based on this evidence, the Board concluded that Samsung had failed to satisfy its burden of persuasion that Hirayama teaches limitation 1d. *Id.* at J.A. 38. The Board further found that various objective indicia of nonobviousness had a nexus to the claimed invention and weighed significantly in favor of nonobviousness. *See generally id.* at J.A. 40–52.

Samsung timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c).

## DISCUSSION

On appeal, Samsung argues that (1) the Board erred in concluding that Samsung had failed to demonstrate that the challenged claims would have been obvious over

Hirayama, and (2) the Board misapplied the nexus requirement for objective indicia of nonobviousness. Because we conclude that the Board's obviousness analysis based on the asserted prior art was supported by substantial evidence, we need not reach any secondary considerations of nonobviousness.

Obviousness is a legal determination based on underlying findings of fact. *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1335 (Fed. Cir. 2020). We review the Board's legal determinations *de novo*, and its factual findings for substantial evidence. *Id.* A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Samsung first argues that the Board erred as a matter of law because its finding that Hirayama is ambiguous concerning the relocation or duplication of the icon "compels the conclusion" that the claims would have been obvious over Hirayama. Samsung Br. at 22–26. In essence, Samsung invokes a "design choice" argument, contending that, because there are only two possible choices—(1) relocating or duplicating the icon or (2) not relocating or duplicating the icon—it would have been obvious to the person of ordinary skill in the art to arrive at the claimed invention. *Id.* We disagree.

We do not understand the Board to have determined that Hirayama itself is ambiguous as to whether the icon is relocated or duplicated during the drag-and-drop operation of Hirayama. Although the Board did conclude that various *portions* of Hirayama were "ambiguous" as to the claimed limitation, *see, e.g.*, *Decision*, J.A. 21–22, its ultimate conclusion was based on its determination that, as a whole, Samsung failed to satisfy its burden of persuasion that Hirayama rendered obvious the claimed invention. *See id.* at J.A. 38 ("Having considered all the evidence of record about Petitioner's contention that Hirayama[]

teaches limitation 1d, we do not find the evidence, *as a whole*, persuasive by a preponderance of the evidence." (emphasis added)).  And, even if the Board *had* concluded that Hirayama itself was ambiguous, there is insufficient evidence and argument in the record that there would have been *only* two options for solving any particular design need addressed by limitation 1d.  We therefore reject Samsung's attempts to liken this case to our prior "design choice" cases.

Samsung also argues that the Board's conclusion is not supported by substantial evidence.  Again, we disagree.  At each turn, the Board considered and weighed the teachings of Hirayama with the parties' expert testimony regarding how those teachings would have been understood by a person of ordinary skill in the art.  *E.g.*, *id.* at J.A. 22 (acknowledging the reasonableness of Samsung's interpretation of Hirayama's summary while crediting Neonode's expert's interpretation of that summary); *id.* at J.A. 23–24 (acknowledging Samsung's expert's testimony but finding it not to be "factually support[ed]"); *id.* at J.A. 24–26 (finding Samsung's interpretation of Figure 3A of Hirayama as "equally plausible" as Neonode's interpretation, which was supported by expert testimony).  Ultimately, it concluded that the evidence supporting Samsung's obviousness position was in rough equipoise with the evidence weighing against that position, such that Samsung had not shown, by a preponderance of the evidence, that Hirayama taught or suggested limitation 1d.  It is not our job to review or reweigh that evidence anew.  *In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011).

Accordingly, because a reasonable mind might accept the evidence as adequate to support the Board's findings, and because those findings support the Board's ultimate conclusion that Samsung failed to show, by a preponderance, that Hirayama renders obvious limitation 1d, we affirm.

SAMSUNG ELECTRONICS CO., LTD. v.         9
NEONODE SMARTPHONE LLC

CONCLUSION

We have considered Samsung's remaining arguments and find them unpersuasive. For the reasons set forth above, we *affirm* the Board's final written decision.

**AFFIRMED**